**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ROCKY WALKER and<br>KRISTI WALKER,<br><br>    Plaintiffs,<br><br>vs.<br><br>PROGRESSIVE DIRECT<br>INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 09-CV-556-TCK-PJC<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Before the Court is Defendant Progressive Direct Insurance Company's ("Progressive") Motion for Summary Judgment (Doc. 21).

**I. Factual Background**

At all times relevant to this matter, Plaintiffs Rocky Walker ("Rocky") and Kristi Walker ("Kristi") (collectively "Plaintiffs") were covered by a Progressive insurance policy ("the Policy") that provided "comprehensive coverage" for Plaintiffs' 2003 Chevrolet Tahoe ("Vehicle"). On or about July 27, 2008, the Vehicle, which had been affixed with a "For Sale" sign, was stolen from an empty parking lot where it had been left by Plaintiffs. The Vehicle was thereafter found abandoned on the property of a Mr. James Duvall. On July 29, 2008, Kristi reported the theft to Progressive. Kristi also informed Progressive that there were two keys to the Vehicle and that Plaintiffs were in possession of both keys. Kristi further informed Progressive that she and Rocky were in Branson, Missouri at the time the vehicle was stolen.

On August 5, 2008, Melissa Piper ("Piper"), a Progressive employee, inspected the Vehicle at Garrett Wrecker Service, Inc. to determine if the Vehicle's column had been compromised and

whether the Vehicle was totaled. Piper concluded the column was not compromised and the Vehicle could be repaired. Piper prepared an estimate for the Vehicle of $2,296.11. Thereafter, the Vehicle was, at the request of Plaintiffs, transported to Jim Glover Chevrolet of Tulsa, Oklahoma ("Jim Glover"). Jim Glover prepared an estimate for repair of the Vehicle, totaling $11,668.80.

As explained by Progressive in its Motion for Summary Judgment and undisputed by Plaintiffs, there are "red flags of fraud" that have been identified by insurers and serve as indicators of insurance fraud. Specifically, it is standard in the insurance industry to refer a claim to a Special Investigations Unit ("SIU") for fraud when a vehicle is "for sale" at the time of loss, the column is not compromised, the vehicle is a "gas guzzler," and all keys are in the insured's possession after the reported loss. Because these factors were present in the instant case, Progressive sent a letter to Plaintiffs on August 25, 2008, informing them that their claim was being investigated by Progressive's SIU and under a reservation of rights. The letter stated that it was "not a denial of coverage" and that Progressive would inform Plaintiffs "of the coverage decision as soon as a determination is made." (8/25/08 Letter, Ex. 16 to Def.'s Mot. for Summ. J.)

Also on August, 25, 2008, Kristi requested another inspection of the Vehicle because she was dissatisfied with the estimate previously provided by Progressive. That same day, a Progressive employee responded to her request and conducted a second inspection of the Vehicle. During this inspection, the Progressive employee was made aware of the fact that despite Kristi's previous assertion that there were two keys to the Vehicle, there were actually three keys.[1] In his February 25, 2010 expert report, Barry Zalma ("Zalma"), Progressive's expert, cited the existence of the third key to conclude that Plaintiffs "misrepresented a material fact" in reporting only two keys to the

---

[1] It is unclear from the record as to how this information was imparted to Progressive.

Vehicle. (Expert Report, Ex. 8 to Pls.' Resp. to Def.'s Mot. for Summ. J. ¶ 62.) Thereafter, during a March 30, 2010 deposition of Jim Glover employee Todd Gilliart ("Gilliart"), Progressive learned the origin of the third key — namely, that Gilliart made the third key for his use after the Vehicle was brought to Jim Glover.

A supplemental estimate was prepared by Progressive on September 4, 2008, which totaled $7,040.92. Thereafter, on September 9, 2008, Progressive asked Kristi to provide all sets of keys to the Vehicle and copies of vacation photographs as proof of Plaintiffs' assertion that they were in Branson, Missouri at the time of the theft. On September 25, 2008, Progressive received copies of Plaintiffs' vacation photos and a single key to the Vehicle. Upon review of the photographs, Progressive concluded that the photos had been altered and were not originals. Progressive thereafter left a message on Kristi's voice mail on October 7, 2008, requesting that Plaintiffs provide original receipts from their vacation to better determine where Plaintiffs were at the time of the loss. On October 16, 2008, Progressive sent a letter by regular and certified mail to Rocky, which followed up on its request for original receipts ("October 16, 2008 Letter"). The letter also stated, "[i]f we do not hear from you within ten (10) days of this letter we will assume you no longer wish to pursue the claim." (10/16/08 Letter, Ex. 21 to Def.'s Mot. for Summ. J.)

A note in Plaintiffs' claim file dated October 22, 2008 states that the SIU investigation "determined there [was] no evidence to indicate that [Plaintiffs] were involved in the theft/bur[n]ing of their [Vehicle]." (10/22/08 Claim File Note, Ex. 6 to Def.'s Mot. for Summ. J. 20.) The note listed the "evidence" as follows: (1) Plaintiffs produced three keys to the Vehicle; (2) Plaintiffs sent pictures from their vacation; and (3) Plaintiffs admitted that the Vehicle was for sale and parked at a public lot. The note further stated that Plaintiffs had ceased cooperation, and that SIU would

continue the investigation to determine the cause of loss if and when Plaintiffs resumed cooperation. On November 3, 2008, Progressive received an e-mail from Rocky, stating that "no one ha[d] called [Plaintiffs] in over a month about [the Vehicle] and no one [would] tell [them] anything about [the Vehicle]." (Claim File, Ex. 6 to Def.'s Mot. for Summ. J. 21.) That same day, Progressive employee Doug Mallory ("Mallory") spoke with Kristi, who denied receipt of the October 16, 2008 Letter. Mallory asked Kristi about the Branson photographs, and Kristi explained that the photos were taken with a blank background at a location named "Dixie Stampede" and that they were able to then select a background. Kristi also provided a website where Mallory could review the photos. Mallory reviewed the website and confirmed that the pictures and dates matched those forwarded to Progressive by Plaintiffs.

On November 17, 2008, Progressive rescinded its reservation of rights letter. Specifically, Progressive sent a letter to Plaintiffs stating as follows:

> We have completed our coverage review for your claim resulting from an incident on July 28, 2008. During this investigation, we identified a potential coverage issue and informed you that your claim would be handled under a "reservation of rights." We have resolved this coverage issue, and [Progressive] will be providing coverage for your loss. We are therefore withdrawing our original reservation.

(11/17/08 Letter, Ex. 22 to Def.'s Mot. for Summ. J.) The record reflects that after the investigation was closed, Plaintiffs did not authorize repair work to be completed on their Vehicle until April 2008 due to, *inter alia*, the discrepancy in the estimates provided by Progressive and Jim Glover.[2] Prior to such authorization, on February 2, 2009, Progressive issued payment to Plaintiffs in the amount

---

[2] Because Plaintiffs have indicated that their claim is based on the contention that the *investigation* of their claim was untimely and improper, *see infra* Section III.B., the Court does not find it necessary to provide a detailed account of the events that occurred subsequent to the conclusion of the investigation.

of $6,040.92, which constituted the amount of Progressive's estimate less the $1,000.00 deductible as provided for under the Policy. As of the date of filing of Progressive's Motion for Summary Judgment, Plaintiffs had not cashed said check.

On June 12, 2009, Plaintiffs brought suit against Progressive in the District Court in and for Tulsa County, State of Oklahoma, asserting a single claim of bad faith and requesting punitive damages. The case was thereafter removed to this Court, and Progressive now seeks summary judgment.

**II.    Summary Judgment Standard**

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

**III.   Discussion**

**A.    Bad Faith Standard**

Every insurance contract carries with it the duty to act fairly and in good faith in discharging its contractual responsibilities, *Garnett v. Gov't Emp. Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008), and

this duty extends to the timely and proper investigation of an insurance claim, *see Brown v. Patel*, 157 P.3d 117, 122 (Okla. 2007). A central issue is whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing. *See Garnett*, 186 P.3d at 944; *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1109 (Okla. 1991).

A party prosecuting a claim of bad faith carries the burden of proof and must plead all the elements of the intentional tort. *See Garnett*, 186 P.3d at 944. The essential elements of Plaintiffs' bad faith claim are as follows: (1) Plaintiffs were covered under the Policy and Progressive was required to take reasonable actions in handling Plaintiffs' claim; (2) the actions of Progressive were unreasonable under the circumstances; (3) Progressive failed to deal fairly and act in good faith toward Plaintiffs in the handling of Plaintiffs' claim; and (4) the breach or violation of the duty of good faith and fair dealing was the direct or proximate cause of any damages sustained by Plaintiffs. *See Badillo v. Mid Century, Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005); *Pitts v. W. Am. Ins. Co.*, 212 P.3d 1237, 1242 (Okla. Civ. App. 2009). This Court's task, when presented with a motion for summary judgment on an insured's claim for bad faith, has been explained by the Tenth Circuit:

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit different inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436-37 (10th Cir. 1993) (applying Oklahoma law) (internal citations omitted).

### B.     Factual Basis of Plaintiffs' Bad Faith Claim

In Plaintiffs' response brief, Plaintiffs make clear that their bad faith claim is founded on the contention that Progressive's investigation was both "untimely" and "improper," and does *not* concern the disagreement between the parties concerning the value of loss or Progressive's right to conduct a fraud investigation. (*See* Pls.' Resp. to Def.'s Mot. for Summ. J. 16 ("The grounds on which [Progressive] has breached its duty of good faith and fair dealing to Plaintiffs, concern the focus and method of [Progressive's] investigation, not any alleged disagreement concerning the value of the loss or whether [Progressive] had a right to investigate whether Plaintiffs were involved in the theft."); *id*. 17 (stating Progressive's investigation was not "reasonably appropriate under the circumstances [because] [t]he facts in the case at bar show that there is evidence of both untimely and improper investigation by [Progressive]").)

Plaintiffs' allegation that Progressive conducted an "untimely" and "improper" investigation is based upon Progressive's handling of (1) the third key and (2) the photographs from Plaintiffs' Branson vacation. (*See id.* 17, 21.) With regard to the third key, Plaintiffs contend that Progressive's actions were unreasonable because Progressive "drew an inference that there had to be an extra key [and] its expert relied on [Progressive's] statements that there was a third key, but it was later determined that the third key was made at request of and was in the possession of [Jim Glover]." (Pls.' Resp. to Def.'s Mot. for Summ. J. 21.) Finally, with regard to the photographs, Plaintiffs contend Progressive acted unreasonably in "[taking] the position that the photos . . . were not original, and were cut and pasted" and in not "call[ing] the Dixie Stampede [to] as[k] about the procedure [for making the photographs]." (*Id.*)

### C.     Application of Bad Faith Standard

In assessing Plaintiffs' allegations in light of the elements of a bad faith claim, the Court finds Plaintiffs' claim cannot withstand summary judgment. First, Plaintiffs offer no explanation as to how they were damaged by the alleged unreasonable actions of Progressive, which is a required element of the bad faith claim. *See Badillo*, 121 P.3d at 1093. Absent such argument, Plaintiffs are unable to overcome Progressive's motion for summary judgment, as they are required to make a showing sufficient to establish the existence of the elements essential to their claim. *See Celotex Corp.*, 477 U.S. at 323-33.

Further, Plaintiffs provide scant argument in support of their assertion that Progressive's investigation was unreasonable. Although Plaintiffs take issue with the manner in which Progressive handled the third key and the Branson photographs, the Court does not find the specific allegations asserted by Plaintiffs to rise to the level of bad faith. For example, although Progressive did not immediately call Dixie Stampede to confirm the legitimacy of the Branson photographs, as Plaintiffs contend should have occurred, Progressive determined the validity of the pictures by other means.

Moreover, Plaintiffs' reliance on Zalma's use of the third key in his expert report is misplaced, as this report was prepared in the course of this litigation and was not part of Progressive's investigation, making it inapplicable to Plaintiffs' bad faith claim. Although it might have been preferable for Progressive to determine the origin of the third key prior to Gilliart's deposition, "an insurer's investigation need only be reasonable, not perfect." *Roberts v. State Farm Mut. Auto. Insur. Co.*, No. 02-7052, 2003 WL 1559155, *4 (10th Cir. Mar. 26, 2003) (applying Oklahoma law) (citing *Buzzard*, 824 P.2d at 1109). Therefore, under the circumstances presented by this case, the

Court finds that Progressive's investigation was indeed reasonable and does not encompass conduct supporting a bad faith claim.

**IV.     Conclusion**

For the reasons outlined here, Defendant's Motion for Summary Judgment (Doc. 21) is GRANTED.  A separate Judgment will be entered by the Court.

**SO ORDERED this 29th day of October, 2010.**

*[Signature: Terence C. Kern]*

**TERENCE C. KERN**
**United States District Judge**